FILED

2012 May-29  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **RUBY LEE OVERSTREET,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:11-CV-1238-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER,** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

Plaintiff Ruby Lee Overstreet ("Ms. Overstreet") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  Ms. Overstreet timely pursued and exhausted her administrative remedies available before the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Overstreet was a 59-year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ").  (Tr. 14).  She has a high school education.  (Tr. 14).  Her past work experiences include employment as a machine tender, a cashier, and a sandwich maker.  (Tr. 108–16).  Ms. Overstreet claims she became disabled on February 1, 2008, due to diabetes, kidney disease, obesity, and hypertension.  (Tr. 11).  Her last period of work ended on February 1, 2008.  (Tr. 11).

Ms. Overstreet concurrently filed applications for SSI and for a period of DIB on March 27, 2008.  (Tr. 74–78).  Her claims were denied by the Regional Commissioner on April 23, 2008.  (Tr. 40–48).  Ms. Overstreet timely requested a hearing, which was held by video on December 17, 2009, in Birmingham, Alabama.[3] (Tr. 9, 49).  The ALJ concluded that Ms. Overstreet was not disabled and issued his written decision denying her applications for benefits on December 21, 2009.  (Tr. 9–15).  The ALJ's decision became the final decision of the Commissioner when the

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]  Ms. Overstreet appeared for the hearing in Tuscaloosa, Alabama.  (Tr. 9).

Appeals Council denied Ms. Overstreet's request for review on February 4, 2011. (Tr. 1–5).

Ms. Overstreet filed her Complaint on April 11, 2011, which asks this court to review the ALJ's decision. (Doc. 1). This court has carefully considered the record and reverses the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper

3

legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At step one, the ALJ found that Ms. Overstreet has not engaged in substantial gainful activity since February 1, 2008.  (Tr. 11).  At step two, he found that the

medical evidence supported a finding that Ms. Overstreet's impairments of diabetes, kidney disease, obesity, and hypertension were considered "severe" according to 20 C.F.R. § 404.1520(c) and 416.920(c).  (Tr. 11).[5]  At step three, the ALJ held that those medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I of the Social Security Regulations.  (Tr. 12).  At step four, the ALJ considered the objective medical evidence and found that Ms. Overstreet retained the residual functional capacity ("RFC") to perform a full range of sedentary work.[6]  (Tr. 12–14).  The vocational expert testified as to the RFC required for Ms. Overstreet's past relevant work, which the ALJ found that Ms. Overstreet could no longer perform.  (Tr. 14).  Finally, at step five, the ALJ directly applied the  Medical-Vocational Guidelines (hereinafter "grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2, to conclude that Ms. Overstreet could perform other jobs existing in significant numbers in the national economy and was "not disabled."  Accordingly, the ALJ denied Ms. Overstreet's applications for disability benefits.  (Tr. 15).

_____

[5]  The ALJ also evaluated the diagnoses of anemia, uterine leiomyoma, and mild coronary artery diseases that were present in Ms. Overstreet's medical records, but found that these did not constitute "severe" impairments for the purposes of her disability claims.  (Tr. 12).  Notably, Ms. Overstreet offered no testimony at the hearing as to these impairments.

[6]  Sedentary work involves lifting no more than 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, and occasionally walking and standing.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

## ANALYSIS

Ms. Overstreet's sole argument on this appeal is that this case should be reversed because the ALJ did not properly consider her age in applying the grids. (Doc. 12 at 2).

The grids require the ALJ to "consider [a claimant's] chronological age in combination with [his or her] residual functional capacity, education, and work experience" to determine vocational ability. 20 C.F.R. § 404.1563(a). However, in applying the grids, the Regulations provide that the Secretary "will not consider [a claimant's] ability to adjust to other work on the basis of [his or her] age alone"; instead, the Secretary is directed to "consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment." *Id.* The Regulations set out the following age categories for use in applying the grid rules: a "younger person" is under age 50; a "person approaching advanced age" falls within the bracket of 50 to 54 years of age; and a "person of advanced age" is age 55 or older. *Id.* § 404.1563(c), (d), and (e). The Regulations further provide:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. <u>We will not apply the age categories mechanically in a borderline situation.</u> <u>If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your</u>

case.

*Id.* § 404.1563(b) (emphasis added).

Here, Ms. Overstreet contends that her age qualified as a "borderline situation" and that the ALJ erroneously applied the grids in a mechanical fashion. Ms. Overstreet was born on May 17, 1960. At the time of the hearing before the ALJ on December 17, 2009, she was 49 years old. She was still 49 when the ALJ issued his written decision on December 21, 2009.

The ALJ's decision reflects that he analyzed Ms. Overstreet's age as of the date she claimed she became disabled rather than the hearing date or the date upon which his decision was rendered. (Tr. 14 ("The claimant was born on May 17, 1960 and was 47 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date.") (emphasis added)). Presumably because the ALJ considered Ms. Overstreet's age to be 47 for the purposes of his grid analysis, the ALJ's opinion does not indicate that he considered her age as a "borderline situation" as contemplated by the Regulations. Indeed, if age 47 were the proper age for the ALJ to apply in his grid analysis, it would not qualify as a borderline situation because it would be more than "a few days" or "a few months" from the next age category, 50–54. *See* 20 C.F.R. § 404.1563(b).

The key question, therefore, is when the ALJ should measure the claimant's

8

age for the purposes of applying the grids? This appears to be an open question in the Eleventh Circuit.[7] However, Judge Guin squarely addressed this question in *Crook v. Barnhart*, 244 F. Supp. 2d 1281 (N.D. Ala. 2003) and persuasively reasoned[8] that the claimant's age should be measured from the decision date rather than the date of the claimant's application for social security benefits or even the date of the first hearing. *Id.* at 1283. The undersigned has previously acknowledged her agreement with Judge Guin's well-reasoned and persuasive opinion in *Crook*. *See Sellers v. Astrue*, Case No. 07-cv-1131-VEH, Doc. 10 at 6 n.3 (N.D. Ala. March 10, 2008) ("Neither side has cited nor has the Court been able to independently locate any

---

[7] The court notes that Plaintiff's opening brief to the court mistakenly refers to Judge Guin's decision in *Crook v. Barnhart*, 244 F. Supp. 2d 1281 (N.D. Ala. 2003) as Eleventh Circuit authority. However, the opinions of other district court judges, even in the Northern District of Alabama, are not binding on this court. *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) ("[T]he district court cannot be said to be bound by a decision of one of its brother or sister judges" although such decisions may be persuasive).

[8] Judge Guin persuasively adopted the reasoning of a published Sixth Circuit decision in holding that "[f]or purposes of determining age under the grids, 'the claimant's age at the time of the **decision** governs.'" *Crook*, 244 F. Supp. 2d at 1283 (quoting *Varley v. v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987)) (emphasis in original). As the court in *Varley* observed:

> This interpretation is consistent with the general thrust of the regulations. The relevant inquiry is whether the claimant has the ability to engage in substantial gainful activity. The fact that a claimant who is unable to engage in such activity at the time of the decision may have been able to do so at some point in the past goes to the question of the onset date, not the question of disability.

*Varley*, 820 F.2d at 780-81. Absent any contrary authority from the Eleventh Circuit, this court agrees with the reasoning of both *Crook* and *Varley*.

9

controlling authority on this issue [of how to determine when a borderline age situation exists]. The Court agrees with Judge Guin's reasoning in *Crook*."). Moreover, topical secondary sources such as *Social Security Law & Practice* persuasively explain that the claimant's age should be measured from the decision date rather than the disability onset date. 3 Soc. Sec. Law & Prac. § 43:153 (2012) ("The SSA considers a borderline situation to exist where a claimant is within a few days to a few months of reaching an older age category and where using the older age category would result in finding the claimant to be disabled. <u>In such cases, the claimant's age is to be determined as of the time of the decision, rather than the disability onset date, the date of application, or the hearing date</u>. (footnotes omitted) (emphasis added)). Accordingly, the court finds that the appropriate measuring date for a claimant's age for purposes of grid analysis is the date that the ALJ's decision is rendered.

The court notes that the Commissioner's briefing likewise reflects the court's understanding that the ALJ's decision date is the governing date for measurement of Ms. Overstreet's age when applying the grid rules. (*See* Doc. 13 at 5 (measuring Plaintiff's age from "the time of [the ALJ's] decision" and "on the date of the [ALJ's] decision")). The Commissioner, however, maintains that the ALJ in this case *did* consider Ms. Overstreet's age as of the date of his decision. (Doc. 13 at 5 ("Thus, the

10

ALJ's decision reflects that he recognized [Ms. Overstreet] was approaching age 50 but was still 49 (a younger person) at the time of his decision." (citing Tr. 15)).  The court disagrees with that interpretation of the ALJ's decision because nowhere in his opinion did the ALJ express his consideration of Ms. Overstreet's age at the time of the hearing (49) or as of the date of his decision.  Instead, the only explicit reference to Ms. Overstreet's age is when the ALJ described her as "47" when classifying her as a "younger individual" in application of the grid rules.  (Tr. 14).  The court will not read into the ALJ's opinion an implicit consideration that Ms. Overstreet "was approaching age 50" at the time of his decision, as the Commissioner seems to invite the court to do.

Therefore, despite the Commissioner's arguments to the contrary, the court finds that it is clear that the ALJ applied the wrong age in his grid analysis.  At the time of the ALJ's decision, Ms. Overstreet was approximately five months away from her fiftieth birthday.  Upon turning 50, Ms. Overstreet would have been classified as a "person closely approaching advanced age," which *could have* materially altered the ALJ's determination under the grids.  Because the ALJ found Ms. Overstreet (at age 47) to be classified as a "younger individual," he applied Rule 201.21, which directed a finding of "not disabled."  (Tr.15).  However, it is significant to note that he did so without expressly making a finding on the transferability of Ms.

11

Overstreet's job skills because that issue was immaterial to his application of Rule 201.21 (to be applied where skills are not transferable) versus Rule 201.22 (to be applied where skills are transferable), as both rules direct a finding of "not disabled." (Tr. 14 ("Transferability of job skills is <u>not material</u> to the determination of disability because applying the [grids] directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.")).

Hypothetically speaking, if Ms. Overstreet were found to qualify for the "person closely approaching advanced age" category, application of the relevant rules – Rule 201.14 or Rule 201.15 – could result in a finding of "disabled" (if her job skills are found to be not transferable) or "not disabled" (if her job skills are found to be transferable). Therefore, consideration of Ms. Overstreet's age is, at the least, a *potentially dispositive* issue that merits remand for further factual findings.

On remand, the ALJ should expressly consider (1) whether Ms. Overstreet's age at the time of his initial decision constituted a "borderline situation" as contemplated by the Regulations discussed in this opinion[9]; (2) if so, whether, based

---

[9] The court notes here that, based on its research, courts will generally recognize a borderline situation where a person whose age falls within six months or less of the next highest age category. *See, e.g., Pettway v. Astrue*, CIV.A 10-127-C, 2010 WL 3842365, at *3 (S.D. Ala. Sept. 27, 2010) ("Based on my review of the cases, the consensus among federal courts appears to be that six months from the older age category is the extent to which courts will recognize a borderline age situation." (citing cases)); *Harrison v. Astrue*, No. 3:09cv509/LAC/EMT, 2011 WL 1158750, at *9 n.14 (N.D. Fla. Feb. 24, 2011) (citing cases). However, the court recognizes that "[i]n applying the Grids, the ALJ has the discretion to determine whether, under the

on the particular facts and testimony of this case, the ALJ finds that the next age category should apply; and (3) if it is determined that Ms. Overstreet should qualify for the "person closely approaching advanced age" category, whether her job skills are transferable as contemplated by the grids. These queries should guide the ALJ in correct interpretation and application of the grids to the facts of this case, considering age as a potentially dispositive factor.

Further, on remand, the parties should be mindful of the burden-shifting evidentiary framework set out by the Eleventh Circuit in *Reeves*:

> In *Broz v. Schweiker,* 677 F.2d 1351 (11th Cir.1982), *vacated and remanded sub nom. Heckler v. Broz,* —— U.S. ——, 103 S. Ct. 2421, 77 L. Ed. 2d 1311, *adhered to,* 711 F.2d 957, *modified,* 721 F.2d 1297 (11th Cir. 1983), this court held that the Secretary could not use the grids that the Secretary had adopted concerning age to establish conclusively a claimant's ability to adapt to a new work environment because the age factor was not amenable to legislative factfinding and had to be determined on an individual basis. *Broz I,* 677 F.2d at 1360. We expressly declined to decide how individual consideration of the age/ability to adapt factor should be done. *Id.* at 1361.
>
> Under the statutory scheme, once a claimant has proved that he can no longer perform his past relevant work, the burden shifts to the Secretary to prove that claimant can perform substantial gainful activity that exists in the national economy. *Id.* at 1355. In discharging this burden the Secretary may use the age factor as applied in the grids as evidence of the claimant's ability to adapt to a new work environment, but this age

---

circumstances of the particular case before him, a claimant's age should be considered borderline, and if so, which Grid Rule(s) should be applied" and that "[t]here are no fixed guidelines as to when a borderline situation exists." *Harrison*, 2011 WL 1158750, at *9 (citations omitted).

factor shall not be conclusive. If the claimant then proffers substantial credible evidence that his ability to adapt is less than the level established under the grids for persons his age, the Secretary cannot rely on the age factor of the grids and must instead establish the claimant's ability to adapt to a new work environment by independent evidence. *Cf. Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (establishing a tripartite scheme of burden of production in Title VII cases). <u>Applied specifically to this case, this burden of production scheme allows the Secretary to rely in the first instance on the age grids, but, if [Ms. Overstreet] introduces evidence that [her] ability to adapt is more limited than that presumed by the grids for [49] year-olds, the Secretary must prove [Ms. Overstreet]'s ability to adapt by other evidence.</u>

*Reeves v. Heckler*, 734 F.2d 519, 525-26 (11th Cir. 1984) (footnote omitted) (emphasis added); *see also Garner v. Heckler*, 735 F.2d 1291, 1292 (11th Cir. 1984) (finding that the ALJ mechanically applied the grids to a claimant who was age 49 and 10 months at the time of the adjudication and remanding case to give claimant the opportunity to make a proffer under *Reeves* framework).

## CONCLUSION

The Court concludes that the ALJ's determination that Ms. Overstreet is not disabled is not supported by substantial evidence because improper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be reversed and remanded, and a separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this the 29th day of May, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge